433 F.2d 1007
 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Plaintiff-Appellee,
v.
AMERICAN CASUALTY COMPANY, a Pennsylvania Corporation, Defendant-Appellant,
The Fidelity and Casualty Company of New York, a New York Corporation, Defendant-Appellee.
 No. 20123.
 United States Court of Appeals, Eighth Circuit.
 November 10, 1970.
 
 Frank X. Cronan, Minneapolis, Minn., for appellant.
 James D. Cahill, Moorhead, Minn., for appellee.
 Before GIBSON and LAY, Circuit Judges, and HUNTER, District Judge.
 LAY, Circuit Judge.
 
 
 1
 A declaratory judgment action was initiated by State Farm Insurance Company to determine the rights and liabilities of three insurers on their respective contracts of insurance. The issue on appeal is whether American Casualty's policy provides only excess coverage. The district court held that the policies of State Farm and American Casualty are both primary insurance and ordered pro rata contribution. State Farm Mut. Auto Ins. Co. v. Northwest Leasing Corp., 299 F.Supp. 630 (D.N.D.1969). American Casualty appeals. We affirm.
 
 
 2
 The facts show that the local station manager of Pembina Broadcasting Company of Fargo, North Dakota, a wholly owned subsidiary of Evansville Television, Inc., of Evansville, Indiana, leased a 1965 Ford station wagon from the Northwest Leasing Corporation of Fargo.[1] The lease required Pembina to purchase liability insurance of $100,000/$300,000 for personal injury and $25,000 for property damage. This policy was issued to Pembina by State Farm. The policy provides that if a loss is covered by other collectible insurance the State Farm coverage shall be applied pro rata with the other insurance.
 
 
 3
 Evansville Television, the parent corporation, was insured by a policy issued by American Casualty. The policy provided coverage of $500,000/$1,000,000 for personal injury and $100,000 for property damage. It is the effect of this policy which is in question here. The insuring agreement covered the insured for liability arising out of the use of "any automobile." Under a policy amendment Pembina, as a subsidiary, is named as an additional insured. The policy contains a pro rata clause similar to the State Farm Clause. However, it also contains a provision that the policy shall be excess insurance only for loss arising from the use of "any hired automobile insured on a cost of hire basis" or arising from the use of "any non-owned automobile." It is on the basis of this provision that American Casualty claims to be an excess carrier rather than a primary insurer responsible for contributing on a pro rata basis.
 
 
 4
 On January 31, 1965, Pembina's station manager collided with another vehicle while driving the leased 1965 Ford. The accident occurred near Dalton, Minnesota. He was killed and several other persons in the two cars were injured. Claims of more than $1,000,000 in state and federal courts were brought against the estate of the station manager, Pembina, and Northwest Leasing. All the actions were tried and concluded, except for the claim of one Janice Pritchard which was settled by State Farm for $6,500 without suit. It is the Pritchard settlement for which State Farm sought and the district court granted pro rata contribution from American Casualty.
 
 
 5
 American Casualty has questioned the jurisdiction of the district court for lack of the requisite amount in controversy. When the action commenced, however, involving all the claims arising out of the accident, the jurisdictional amount was satisfied several times over.[2] It is well settled in diversity cases that jurisdiction, once properly vested, is not lost by subsequent events which reduce the amount in controversy to less than the jurisdictional amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 292-293, 58 S.Ct. 586, 82 L.Ed. 845 (1938).
 
 
 6
 American Casualty's primary argument is that the State Farm policy specifically covered the 1965 Ford station wagon, whereas the schedule of insured vehicles appended to the American Casualty policy did not mention this specific automobile. The argument is that since Pembina did not request coverage of the Ford by American Casualty (through Evansville) the intention of the parties was not to provide coverage for that automobile. This overlooks the policy contract which provides liability insurance for loss arising out of the use of "any automobile" by the insured. This language does not manifest an intention to exclude automobiles not listed on the policy schedule. At most it raises a doubt as to the intention, and such an ambiguity (if it really is ambiguous) must be resolved against the insurer preparing the contract. As a matter of simple policy construction it appears that the American Casualty policy is primary insurance unless limited by some other term of the policy.
 
 
 7
 The question then becomes whether any policy exclusion protects American Casualty from primary liability. American's "Other Insurance" clause provides:
 
 
 8
 "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance." (Emphasis ours.)
 
 
 9
 It is agreed that North Dakota law controls. However, both parties concede that there exists no specific North Dakota case law governing construction of this clause. The district court determined that the North Dakota Supreme Court would follow the prevailing view. It is generally held that when an excess clause in one policy conflicts with a pro rata clause in another policy, the excess clause controls and is given effect. Travelers Indemnity Co. v. National Indemnity Co., 292 F.2d 214, 223 (8 Cir. 1961); Citizens Mut. Auto. Ins. Co. v. Liberty Mut. Ins. Co., 273 F.2d 189, 192-193 (6 Cir. 1959). However, the pro rata clause alone governs in all other situations than those which fall within the terms of the excess clause. Citizens Mutual, supra, at 193, quoting from American Auto. Ins. Co. v. Republic Indem. Co. of America, 52 Cal.2d 507, 314 P.2d 675, 678 (1959).
 
 
 10
 Thus, American's coverage is excess if the loss arises from the use of (1) a hired automobile insured on a cost of hire basis or (2) any non-owned automobile. American's policy defines "automobile" as follows:
 
 
 11
 "(b) Automobile. Except where stated to the contrary, the word automobile means a land motor vehicle or trailer as follows:
 
 
 12
 (1) Owned Automobile — an automobile owned by the named insured;
 
 
 13
 (2) Hired Automobile — an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile;
 
 
 14
 (3) Non-Owned Automobile — any other automobile."
 
 
 15
 It appears that the 1965 Ford was "used under contract in behalf of, or loaned to, the named insured" so that it is a "hired automobile" within the terms of the American policy. The next inquiry is then whether this hired automobile was insured on a cost of hire basis. As defined by the policy, when used as a premium basis,
 
 
 16
 "(6) the words `cost of hire' mean the amount incurred for (a) the hire of automobiles, including the entire remuneration of each employee of the named insured engaged in the operation of such automobiles subject to an average weekly maximum remuneration of $100, and for (b) pickup, transportation or delivery service of property or passengers performed by motor carriers of property or passengers for hire, other than such services performed by motor carriers which are subject to the security requirements of any motor carrier law or ordinance. The rates for each $100 of `cost of hire' shall be 5% of the applicable hired automobile rates, provided the owner of such hired automobile has purchased automobile Bodily Injury Liability and Property Damage Liability insurance covering the interest of the named insured on a direct primary basis as respects such automobile and submits evidence of such insurance to the named insured."
 
 
 17
 It is conceded that American did not insure the 1965 Ford station wagon on this basis. In fact, American was unaware that its insured had leased the car at all. American argues that no premium was collected for coverage of the Ford Station wagon.[3] The district court concluded that the excess clause is not applicable when the hired car is not insured on a cost of hire basis. In support of that conclusion the court relied on National Surety Corp. v. Western Fire & Indemnity Co., 318 F.2d 379, 387 (5 Cir. 1963). The court also cited Powell v. Home Indemnity Co., 343 F.2d 856, 859 (8 Cir. 1965), and Liberty Mut. Ins. Co. v. U. S. Fidelity & Guaranty Co., 232 F.Supp. 76, 82 (D.Mont. 1964). These cases support the cited proposition. American Casualty offers no authority to the contrary and merely states that the National Surety case involves different facts. The only case cited by American Casualty in support of its general position is Travelers Indemnity Co. v. National Indemnity Co., supra. However, that case merely indicates that where applicable, an excess clause is to be given effect. Aided by the above cases, we agree with the district court that American does not fit into the first excess exclusion.
 
 
 18
 We must then determine whether the second excess exclusion applies, i. e. whether the 1965 Ford was a "non-owned automobile." At first glance this would seem to be the case. Reference to the policy definitions, however, indicates otherwise. By policy definition a "non-owned automobile" is "any other automobile." Considered in context this obviously means any automobile other than an "owned automobile" or a "hired automobile." Although the automobile in question was not insured on a cost of hire basis, there is little doubt that it was a "hired automobile" within the terms of the policy. Therefore, we conclude that the excess clause is not applicable and American Casualty is primarily liable with State Farm under its pro rata clause.
 
 
 19
 American argues on equitable considerations[4] that it should not be required to cover an automobile of which it was not even aware or which it did not subjectively intend to insure. However, as the draftsman of its own insurance contract, it is solely responsible for defining the scope of its liability and for defining its terms such that any hired automobile even though not insured on a cost of hire basis was not a non-owned automobile. We recognize a salient principle in this respect:
 
 
 20
 "`Questions of contribution between coinsurers have caused much trouble to the courts, a large part of which has arisen through efforts to equalize equities outside the contract. This trouble is lessened if the parties are left with their contracts as they themselves have made them.'" Citizens Mutual, supra, 273 F.2d at 194, quoting authority.
 
 
 21
 In the area of adhesive contracts an insurer virtually controls the terms of the bargain. The insurer holds the key to its own contractual obligations, and no court should interfere with what the insurer has constructed.
 
 
 22
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 Northwest Leasing was named as an additional insured under the State Farm policy. Northwest Leasing also had its own policy covering the Ford issued by Fidelity and Casualty Co. The district court held that the Fidelity policy was excess insurance only and the parties have not appealed this determination
 
 
 [2]
 Counsel further conceded in oral argument that decision in this appeal may affect ultimate contribution of the respective carriers in the other cases
 
 
 [3]
 However, the policy provides:
 "The advance premium stated in the declarations is an estimated premium only. Upon termination of this policy the earned premium shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to this insurance. If the earned premium thus computed exceeds the estimated advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured."
 
 
 [4]
 The judgment of the district court was that State Farm's applicable policy limits were $50,000 and American Casualty's applicable policy limits were $500,000. The court held that under its pro rata clause American was required to contribute to State Farm in the proportion of 500/550 or 10/11ths of the Pritchard claim
 
 
 
 23
 GIBSON, Circuit Judge (dissenting).
 
 
 24
 I respectfully dissent. Although I fully agree on the jurisdictional issue, I feel that the result reached by the majority on the merits is not only unfair but contrary to the demonstrated intention of the parties in securing and issuing the insurance policies in question. I also realize the reasoning employed by the majority has a certain logical basis because of the language used in setting forth certain terms and definitions in the American policy. But the net effect of the majority decision is to relieve State Farm of 10/11ths of its contractual obligations as a primary insurer by a fortuitous and unintended extension of a master policy issued by American that was obviously not intended by the insured or by American to afford primary coverage to the 1965 Ford.
 
 
 25
 In discussing judicial problems attendant to fairly reconciling various separate clauses of "proration," "excess coverage" and "other insurance" by which each insurance company attempts to restrict its coverage and take advantage of possible coverage by other policies, Judge Tate's approach in his concurring opinion in State Farm Mutual Automobile Insurance Company v. Travelers Insurance Company, 184 So. 2d 750, 754 (La.App.1966) merits consideration:
 
 
 26
 "Nevertheless, although the respective clauses cannot be reconciled by word-logic, the respective policy coverages can be sensibly allocated in the light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy."
 
 
 27
 A similar approach in the instant case would more nearly conform both with the intention of the parties and the practicalities of securing adequate liability insurance without duplication of premium costs and without loss of coverage to the insured or to the public.
 
 
 28
 The question of overlapping coverage has produced much litigation at the expense of the insureds and the public without increasing the coverage to the insureds or to the public. I feel that a better reasoned view would be to give major consideration to the intention of the parties on coverage rather than to a construction of inartfully drawn conditions and definitions inserted in an adhesive policy that have the effect of operating contrary to the intentions of the parties. The Minnesota Supreme Court has also viewed this problem on an overall basis laying forth certain guidelines of construction, which appear to me to be sound, reasonable and empirically justified in a case of this kind. In Federal Insurance Company v. Prestemon, 278 Minn. 218, 153 N.W.2d 429 (1967), the Minnesota Supreme Court expressly adopted Judge Tate's approach and set out four factors to be considered in the allocation of liability between the insurers:
 
 
 29
 "(1) Which company by its policy intended to cover `business operations'? (2) Which company specifically described the accident-involved vehicle in its policy? (3) Which premium is reflective of the greater contemplated exposure? (4) Which company insured the particular risk as an `incident' of its object, and which policy appears to cover the particular car and the risks inherent in using the car for contemplated `business operations' uses?" Id. at 436-437.
 
 
 30
 The principle of Prestemon, as embodied in these four tests, is equally applicable to the instant case.
 
 
 31
 The State Farm policy was written specifically for and exclusively described the 1965 Ford while the American policy did not. State Farm received a full premium for the specific coverage, while American did not even have knowledge of the lease of the car and charged no premium. It is true that the American policy provided primary coverage to the insured for liability arising out of the use of "any automobile"; however, Evansville's premium was based upon "the hazards described in the declarations" of the policy, which included a listing of automobiles, plus its risk as an excess insurer on automobiles used by the insured but not specifically listed in the declarations. This was not a flat rate premium; the premium for the primary coverage was clearly determined by the automobiles listed on the Declarations sheet. Evansville's prior practice under this American policy supports this conclusion. In at least two instances in which Evansville or Pembina wanted primary coverage of a leased automobile, the automobiles were listed by American under its Declarations sheet of described and insured vehicles and an appropriate endorsement describing the car added to the policy, a certificate of insurance was transmitted to the lessor and an additional premium was charged.
 
 
 32
 The intent of the parties is clearly manifested in the above facts. State Farm was the primary insurer of the leased automobile; Evansville didn't intend that its regular American policy provide primary coverage for which it would have to pay an additional premium or it would merely have added the 1965 Ford to the American Declarations sheet. Where there is valid primary coverage on a non-owned automobile, as in this case, the American policy should provide only excess coverage and American's excess clause should be construed so that a "non-owned automobile" includes a "hired automobile" insured by someone else on a primary basis. This construction of American's policy — that it provides only excess coverage on hired automobiles (including those insured on a cost of hire basis) — is a reasonable one, for in the ordinary course of business either the lessor or lessee will obtain primary coverage. By this construction, the premiums paid are commensurate with the risk, the insured is not penalized by the payment of double premiums, and American is not penalized with an unknown potential obligation not scheduled in its policy as a primary risk; yet the public is fully protected. By finding American to be a primary insurer of the car in question, the majority penalizes American by requiring it to provide coverage for which it received no consideration (except a possible charge against the insured after actual liability had attached),[1] penalizes the insured by making it pay for coverage it didn't want or need because it had already purchased primary coverage from State Farm, and exonerates State Farm from most of its contractual liability as a primary insurer.
 
 
 33
 I would reverse the District Court judgment on the merits.
 
 
 
 Notes:
 
 
 [1]
 The American policy appears to provide for a retroactive premium charge for this automobile since provision is made for computation of an earned premium upon termination of the policy. However, as a practical matter, there is no way American can collect such premiums if it is unaware that its insured has leased a car and the insured itself does not intend that its American policy provide primary coverage. As a practical matter, only where a loss occurs and liability has attached will an additional premium be subject to collection. This is not commensurate with the risk contracted for by American