CITIZENS INDEMNITY INSURANCE COMPANY OF NORTH
AMERICA v CITIZENS MUTUAL AUTOMOBILE INSURANCE
COMPANY

1. INSURANCE—AUTOMOBILES—PRIMARY LIABILITY.

Neither insurer was "primarily" liable with respect to the other,
and thus obligated to pay its policy limits before the obligation
of the other insurer became effective, where one insurer had
issued a conventional automobile public liability policy covering
a named insured and a particular motor vehicle, and the other
had issued a policy to a corporate association which included
the named insured of the first policy, but did not cover any
specific vehicles, and protected the named insured against any
failure to provide "safe transportation".

2. INSURANCE—AUTOMOBILES—SETTLEMENT—BAD FAITH.

Bad faith by one of two insurance companies insuring the same
insured was not shown by showing that it offered $7,500 in
settlement of its liability on a policy limit of $10,000 whereas
the other company offered $18,000 in settlement of its liability
for the same accident on a policy with a limit of $100,000 only
if the first company paid its policy limit, where the policy
having the $10,000 limit was not primary with respect to the
policy having the $100,000 limit because they were different
kinds of insurance.

Appeal from Genesee, John W. Baker, J. Sub-
mitted Division 2 March 1, 1972, at Lansing.
(Docket No. 12410.) Decided May 26, 1972.

Complaint by Indemnity Insurance Company of
North America against Citizens Mutual Automo-
bile Insurance Company for indemnification for

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur 2d, Automobile Insurance § 200.
[2] 7 Am Jur 2d, Automobile Insurance § 156 *et seq.*

liability under an insurance policy. Judgment for defendant. Plaintiff appeals. Affirmed.

*Gault, Davison & Bowers,* for plaintiff.

*Heilman, Purcell, Tunison & Cline,* for defendant.

Before: McGREGOR, P. J., and J. H. GILLIS and O'HARA,* JJ.

O'HARA, J. Plaintiff appeals of right from a finding of no cause of action by the trial judge.

We have been favored with a comprehensive opinion upon which the order adverse to plaintiff was based. There is no cross-appeal.

This is a controversy between two insurance companies, each of which had exposure under a public liability policy. Plaintiff Indemnity Insurance Company of North America (hereafter North America) had a policy limit of $100,000. Defendant Citizens Mutual Automobile Insurance Company (hereafter Citizens) had a policy limit of $10,000. Citizens' policy provided the conventional automobile public liability coverage specifying a named insured and a particular motor vehicle. North America's was completely different in kind. It specified a named insured, but no specific vehicle or vehicles. Rather, it protected the named insured against any failure to provide "safe transportation".

This latter policy was obtained by a corporate entity called Michigan Field Corps, Inc., which was operated subject to the Migrant Labor Agreement of 1951. This agreement, Federally negotiated with the Mexican government, in effect guarantees safe

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

transportation of Mexican nationals, employed as what is generally referred to as migrant workers, between places of employment; that is to say, the farms or vineyards of various growers.

This lawsuit grows out of the result of an action in the Federal district court. A Mexican national named Jose Lopez was a migrant worker so-called, and was protected by the Migrant Labor Agreement previously mentioned. He was riding in the rear of a truck which was carrying other field workers and some bags of pickles to a collection station. The truck was owned by Ventura Paleo, an American citizen. Paleo was employed by the J. K. Weller Pickle Growers Association which was an included insured under the North America policy. He was also the named insured and his truck was specifically covered under the Citizens' automobile liability policy.

Lopez was riding on top of the pickle bags. It was strenuously urged in the Federal court suit that he and the other workers were expressly ordered not to sit on the pickle bags, but to stay down in the part of the truck not occupied by cargo. While on the public roadway leading to the collection station, Lopez was struck by the limb of a tree overhanging the highway and most seriously injured. He instituted an action together with his wife against Paleo. Citizens undertook the investigation and made an offer of settlement of $7,500. North America committed itself to $18,000 in addition, but only on the condition that Citizens pay its policy limits of $10,000. Plaintiffs were willing to accept $28,000, no less, in full settlement. A separate record was made out of the presence of the jury concerning the settlement negotiations. The positions of both insurers and the plaintiffs were made crystal clear.

Citizens would not budge from its position of 75% of its policy limits. North America would not pay the $18,000 unless Citizens paid the full $10,-000. Plaintiffs' counsel, on instructions from the Mexican government, insisted on $28,000.

Negotiations collapsed. The case went to the jury. It returned a verdict of $40,000 for Mr. Lopez and $7,500 for his wife.

As we discussed the case, after able presentation by both counsel, we were tempted beyond our strength to include in our opinion the following original variation upon a bit of well-known dog-gerel:

Of all sad words which do lawyers nettle,
The saddest are, why didn't we settle?

The clearest way we can point out what is involved here is to make abidingly clear what is *not* involved. This is not the usual "primary" and "excess" insurer situation where one company insures the named insured and a particular vehicle while another company insures a driver of that vehicle other than the named insured. Whatever the law is as to "primary" and "excess" coverage, is nothing to the purpose here. We are unable to accept North America's position that Citizens was primarily liable and thus obligated to pay its policy limits before liability attached to North America or before it became obligated to contribute to settlement. As was made clear by bench questioning, plaintiffs Lopez could have proceeded directly against Michigan Field Crops, Inc. or J. K. Weller Pickle Growers Association, or both, on the theory of failure to afford the Lopezes "safe transportation".

We find no Michigan precedent precisely in point. We hold as a matter of law that North

America was just as "primarily" liable as Citizens. The difference was in the type of coverage written and the policy limits. We cannot conceive of North America as affording only "excess" coverage. It was in no position legally, as we view the matter, to insist on Citizens paying its full policy limits as a condition to North America's "contributing".

We see little of precedential value to our jurisprudence in discussing again at length the concepts of primary and excess coverage and the *pro rata* and excess insurance clauses in the two policies. North America undertook to insure against a failure to supply "safe transportation". If it had a defense against this failure, it was its obligation to get into the lawsuit and to say so, or suffer the consequences of a general verdict that did not specify the basis upon which it was rendered. Its named insureds were named defendants, just as was Citizens' named insured. We think this is enough said.

We find no substance in the claim of "bad faith" on the part of defendant Citizens. As the trial judge noted:

> "It does not appear to the court that plaintiff has established an adequate showing of bad faith on the part of defendant where it had offered 3/4 of its policy limits in an effort to achieve settlement whereas plaintiff had offered less than 20% of its policy limits to achieve the same result."

We are not unmindful that plaintiff North America urges that had it paid any amount before Citizens paid its policy limits, it would have become a "volunteer" and thus barred from recovery. We acknowledge the cases in support of the position supplied after argument. In consequence of our view as to the nature of North America's

coverage, and the inclusion of its named insureds as defendants, we regard the question decisionally irrelevant.

The judgment of no cause of action is affirmed. Costs to the defendant.

All concurred.