Richard NORGAARD, Plaintiff and
Appellant,

v.

NODAK MUTUAL INSURANCE COMPA-
NY, Defendant and Respondent.

Civ. No. 8838.

Supreme Court of North Dakota.

Oct. 31, 1972.

Ohnstad, Twichell, Breitling & Arntson,
West Fargo, for plaintiff and appellant.

Nilles, Hansen, Selbo, Magill & Davies,
Fargo, for defendant and respondent.

ERICKSTAD, Judge.

Richard Norgaard, as plaintiff, appeals from the judgment of the district court of Cass County entered on November 10, 1971, which dismissed his complaint against the defendant Nodak Mutual Insurance Company.

The material allegations of the complaint are that Nodak was at all times pertinent to this lawsuit authorized to do insurance business within the State of North Dakota; that Richard was the owner of a certain 1959 model Chevrolet automobile; that an insurance policy covering the said automobile was issued to Richard and was in effect at all times pertinent; that by the terms of the policy Nodak contracted to defend in the insured's name and on his behalf any suit brought against the insured arising out of the occurrence of any accident covered by the insurance policy issued to the insured; that James Baldock and Esther Baldock claimed that on the 20th of August 1967, while the policy was in full force and effect, their son Stanley Baldock met with an accident as a result of Richard's careless, reckless, and negligent use of said automobile; that thereafter due notice was given Nodak of said accident; that during January of 1969 the Baldocks commenced an action against Richard in the district court of Cass County, which was subsequently transferred to the district court of Steele County, to recover damages sustained by reason of the injuries suffered by their son Stanley; that Richard forwarded to Nodak the summons and complaint served upon him and requested Nodak to defend the action, but that Nodak refused to defend the action and returned the summons and complaint to Richard, suggesting that he procure the services of an attorney of his own choosing in order to put in an answer prior to the expiration of the period for answering, in order to avoid a default judgment; that thereafter Richard retained the services of Nelson, Mack & Moosbrugger, attorneys at law, Grand Forks, North Dakota, to represent and defend him in said action; that

on the 26th of January 1970 the trial of said action was duly had in the district court of Steele County, in which Richard was duly represented by John Moosbrugger of the aforesaid law firm; that the district judge, the Honorable Adam Gefreh, found the Baldocks entitled to recover $7,500 in damages plus costs; that on the 24th of February 1970, a judgment was duly entered upon said findings in favor of the Baldocks and against Richard in the sum of $7,500 plus costs and disbursements of $31.10; that Richard incurred legal expenses in the defense of the action in the sum of $1,500; and that prior to the commencement of this action against Nodak, Richard demanded that Nodak indemnify him in the sum of $9,031.10, but that Nodak refused to do so. The prayer for relief is that Richard receive a judgment against Nodak in the sum of $9,031.10, plus interest, costs, and disbursements.

The pertinent allegation of the answer filed by Nodak is that the policy does not cover the death of Stanley Baldock, nor the judgment obtained against Norgaard arising out of said death, nor the attorney fees and costs incurred by Norgaard in defense of the Baldock action, nor the interest on the judgment, as the death was not "a result of the ownership, maintenance or use of the automobile described" in the policy.

The pertinent findings of the trial court in the Baldock action are contained in paragraphs II through VI of the trial court's findings of fact, as follows:

"II.

"That on the afternoon of August 20, 1967, the defendant, Richard Norgaard, was in the control of a 1959 Chevrolet Fordor Sedan automobile and did use and operate said automobile to go hunting.

"III.

"That the defendant, Richard Norgaard, while operating and in control of

said automobile, did stop said automobile, alight from the same and while using the roof of the automobile as a gun rest did, in a careless, reckless and negligent manner, with wanton disregard for the safety of others, discharge said rifle in · such a manner that the bullet discharged therefrom struck Stanley Baldock, the deceased eldest son of the plaintiffs, as he was getting out of the automobile.

"IV.

"That as a result of the carelessness, recklessness, and negligence of the defendant, Richard Norgaard, Stanley Baldock did receive a bullet wound in his head, suffered great pain and died on September 2, 1967.

"V.

"That as a result of said death, the plaintiffs have been wrongly deprived of the services, companionship, and financial assistance of their eldest son, the deceased Stanley Baldock.

"VI.

"That as a result of the carelessness, recklessness, and negligence of the defendant, Richard Norgaard, the plaintiffs herein have suffered and endured great pain, incurred expenses for medical attention, hospitalization, funeral, and travel, said expenses exceeding Three Thousand Two Hundred and no/100 ($3,200.00) and have suffered pecuniary loss and injury as a result of the death of their son, which, together with the medical, hospital, funeral, and travel expenses total Seven Thousand Five Hundred and no/100 ($7,500.00)."

The pertinent facts in the subsequent action initiated by Norgaard against Nodak are stated in paragraph I of the trial court's findings of fact, as follows:

". . . on August 20, 1967, the Plaintiff and three young companions, each of whom was armed with a .22 caliber rifle, embarked on a Sunday afternoon hunting expedition. The hunting party was being transported by an automobile owned and operated by the Plaintiff. The incident giving rise to this lawsuit occurred after the Plaintiff and his companions had stopped a number of times to shoot at small birds and, on the occasion in question, the Plaintiff and two of the other companions, stepped out of the stopped automobile to shoot at some blackbirds. The Plaintiff stepped out of the automobile on the driver's side and was using the roof of the car as a bench rest to shoot at the blackbirds, which were located in a field on the opposite side of the car. The Plaintiff had fired once and just as he fired a second time, a head appeared in the scope of his rifle and, upon investigation, he learned that the fourth member of the group, who had not gotten out of the automobile originally, had stepped out and stood up directly in the line of fire of the Plaintiff's rifle and was shot in the head, receiving a fatal injury therefrom."

The trial court in the Norgaard action against Nodak found: "That the fatal shooting of Stanley Baldock arose out of facts and circumstances which had no causal relationship to, and did not arise out of the ownership, maintenance, or use of the automobile owned and operated by the Plaintiff and, therefore, the damages resulting therefrom are not within the coverage of the policy of insurance issued by the Defendant."

As the crucial facts in this case are not in dispute, we shall include them herein as summarized in Norgaard's brief filed with this court.

On the afternoon of August 20, 1967, Richard Norgaard and Stanley Baldock, along with two other companions, embarked on a hunt for blackbirds, hawks, and other fowl. Richard, along with his hunting companions, proceeded to drive the countryside between the towns of Hatton

and Finley, North Dakota, scrutinizing the roadways and fields for intended game. For transportation, the four young men used Richard's 1959 Chevrolet Fordor automobile. At all times during the course of the afternoon, the automobile was operated by Richard. On several occasions, the automobile was stopped and some or all of its occupants would alight and discharge their rifles at intended targets.

On the occasion of the accident, Richard spotted some likely targets flying over a field to the side of the road. He stopped his automobile and, while using the roof of his automobile as a gun rest, discharged a .22 rifle, after sighting through the scope attached to the same, in such a manner that the bullet discharged therefrom struck Stanley in the back of the head as he was alighting from the automobile. Stanley was rushed to a hospital in Northwood, North Dakota, and on that same day was transferred to a hospital in Fargo. Approximately thirteen days later, without gaining consciousness, Stanley died.

The pertinent part of the automobile insurance policy provides coverage for: "Bodily injury or death at any time resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons as result of the ownership, maintenance or use of the automobile described herein."

The basic issue to be decided is whether the accident in which Stanley was injured and from which he died resulted from the ownership, maintenance or use of the automobile.

◼ We agree with the conclusion of the trial court, the Honorable Roy K. Redetzke, district judge of Cass County, that Stanley's injury and death did not result from the ownership, maintenance or use of the automobile, and thus that Nodak is not liable under its policy to Norgaard. It is our view that the death resulted not from

the ownership, maintenance or use of the automobile, but from the use of the rifle, the rifle being an independent cause of Stanley's death.

◼ Norgaard relies on a number of decisions which he contends have found liability on the part of the insurance carrier under circumstances similar to the instant case. Although those decisions may be somewhat distinguished upon the facts, we do not rest our opinion in this case upon such distinctions, but rather base our opinion upon the idea that "use", to result in liability on the part of the insurance carrier, must be such use as arises out of the inherent nature of the automobile.

In the instant case, the automobile was being used merely as a bench rest for the rifle. A fence post could have served the same purpose.

The leading case relied upon by Norgaard is Fidelity & Casualty Co. of New York v. Lott, 273 F.2d 500 (5 Cir. 1960).

In that case, the named insured, along with three companions, was in search of game on a mountainous road in Colorado. Spying three deer slightly below and to their right, the named insured brought the insured vehicle to a stop and emerged with his rifle on the left-hand side of the vehicle. Leaning over and against the vehicle and resting his rifle across the top, the named insured fired at one of the deer. For some unexplained reason, the bullet tore through the top of the car and upon being deflected downward it inflicted fatal injuries upon one of the companions who was seated on the right-hand front seat of the vehicle.

The Court of Appeals for the Fifth Circuit, in a two-page opinion, discounted the appellant's argument that the automobile was being used as a gun rest and not as a vehicle, and, applying the rule that if the language of an insurance policy admits of more than one construction, that most fa-

vorable to the insured must be adopted, concluded that the verdict of the jury holding the insurance company liable was the only verdict legally permissible under the terms of the policy.

The Court of Appeals, relying on two of its previous decisions, said:

" . . . the words 'incident to and arising out of the use of a motor vehicle' are not restricted to occasions when the insured party was hurt either because of the running of the automobile or because of its standing after normal use." Fidelity & Casualty Co. of New York v. Lott, 273 F.2d 500, 502 (1960).

Roland H. Long, in his work "The Law of Liability Insurance" (1972), after analyzing *Lott,* had this to say:

"The Court of Appeals for the Fifth Circuit [Fidelity & Cas. Co. v. Lott, 273 F.2d 500 (5th Cir. [Tex.] 1960)] gave a construction to the phrase 'arising out of' the use of an automobile, that was both fallacious and latitudinarian." Long, "Law of Liability Insurance (1972), Copyright 1969 by Matthew Bender & Co., Inc., § 1.22, p. 1–59.

"When an insurer offers the public a policy of insurance that lacks clarity, it must take some of the risks of confusion it engenders. But the phrase 'arising out of the use' does not lack clarity. In the natural and straightforward sense, the word 'use' as employed in an automobile liability policy is not so broad in scope as to include use of the automobile as a gun rest." Long, *supra,* § 1.22, p. 1–60.1.

In a 1963 publication of American Law Reports Annotated, it is stated:

"All the cases agree that a causal relation or connection must exist between an accident or injury and the ownership, maintenance, or use of a vehicle in order for the accident or injury to come within the meaning of the clause 'arising out of the ownership, maintenance or use' of a vehicle, and where such causal connection or relation is absent coverage will be denied. The difficulty therefore, relates mainly to the determination whether or not there was under the facts of the particular case the required causal relationship." 89 A.L.R.2d Annotated, Automobile Liability Insurance, p. 153.

■ In determining the meaning of the phase "arising out of", courts have recognized that the causal relationship need not constitute a proximate cause, but on the other hand if an injury is directly caused by some independent or intervening cause it does not arise out of the use of an automobile, notwithstanding there may have been some remote connection between the use of an automobile and the injury complained of.

Long, in the work previously cited, emphasizes this fact.

"The phrase 'arising out of' is not to be construed to mean 'proximately caused by.' The thought expressed by the words 'arising out of the use of an automobile' is comprehensive and broad. in service. The phrase itself is much broader than a phrase such as 'proximately caused by the use of the automobile.' The words 'arising out of' mean causally connected with, not 'proximately caused by' use. ' "But for" causation, i. e., a cause and result relationship, is enough to satisfy the provision of the policy.'

"The term is ordinarily understood to mean 'originating from,' or 'growing out of,' or 'flowing from.' It does not require a finding that the injury was proximately caused by use of the automobile, but only that it arose out of the use. An injury does not arise out of the use of an automobile if it is directly caused by some independent act or intervening

cause wholly disassociated from, independent of, and remote from its use." Long, *supra*, § 1.22, pp. 1–57 and 1–58.

It is our view that the use of the rifle, notwithstanding it rested upon the automobile at the time of its discharge, constituted an independent and intervening cause of the injury and death of Stanley Baldock.

*Lott* was a decision rendered by the Fifth Circuit Court of Appeals, in which it attempted to determine the law of Colorado. Since the decision in *Lott*, the highest court of Colorado has, without reference to *Lott,* rendered two decisions ignoring that case.

In the one case, the named insured's automobile had been used by the named insured's son to transport his companions and himself from Greeley High School to target practice. On their return to school, after the son had left the car and entered the classroom while two of his friends remained in the car, one of the two toyed with a pistol which accidentally discharged, killing the other.

Under those circumstances the Colorado court held that there was no causal connection between the discharge of the pistol and the stopped vehicle such as would afford coverage under the insurance policy. After citing the annotation in American Law Reports 2d Annotated, previously referred to in this opinion, it cited from 7 Appleman, Insurance Law and Practice, § 4317, at 146, to the effect that the accident must have arisen out of the inherent nature of the automobile as such in order to bring it within the terms of the policy. Mason v. Celina Mutual Insurance Company, 161 Colo. 442, 423 P.2d 24, at 25 (1967).

The second case in which the Colorado court seems to have ignored *Lott* is that of Employers Casualty Company v. Azar, 28 Colo.App. 566, 479 P.2d 979 (1970). In that case, Azar, the named insured, wounded a hunting companion while the two were hunting rabbits along a public highway. Immediately preceding the accident, Azar had been driving along the highway with his companion when two rabbits were seen and Azar stopped the automobile. Azar prepared to fire a shotgun through the car window, but before firing noticed a car approaching from the opposite direction. When he brought the shotgun back into the car it accidentally discharged, injuring his companion. The court held that this case was controlled by *Mason* and that, accordingly, the car insurance carrier was relieved of liability. The Colorado court noted that two other States, in considering analogous cases, had cited *Mason* with approval and reached the same conclusion. See Brenner v. Aetna Insurance Company, 8 Ariz.App. 272, 445 P.2d 474 (1968); United States Fidelity & Guaranty Co. v. Western Fire Insurance Co., 450 S.W.2d 491 (Ky.1970).

In light of the conclusion that we have arrived at relative to this issue, it becomes unnecessary for us to consider the other issues raised in this appeal. Accordingly, the judgment of the district court of Cass County should be affirmed, and it is so ordered.

STRUTZ, C. J., and PAULSON, KNUDSON and TEIGEN, JJ., concur.