Glennice L. HOUSER, individually and as surviving wife of Russell M. Houser, deceased; Patrick S. Houser and Nichole A. Houser, by their next friend, Glennice L. Houser, Plaintiffs,

v.

Timothy J. GILBERT, Harlin Fraedrich, d/b/a Fraedrich Trucking Co., and

Mike Brakke, Defendants and Third-Party Plaintiffs,

v.

Paul BRAKKE, Steven Brakke and Donald Brakke and Virgil Torgerson, Third-Party Defendants,

and

Carriers Insurance Company, Intervenor,

and

Mike Brakke, Third-Party Plaintiff,

and

Austin Mutual Insurance Company, Third-Party Defendant and Fifth-Party Plaintiff,

and

Paul BRAKKE, Steven Brakke and Donald Brakke, Third-Party Defendants and Fourth-Party Plaintiffs,

v.

AUSTIN MUTUAL INSURANCE COMPANY, Fifth-Party Plaintiff and Appellee,

v.

TRI–STATE MUTUAL INSURANCE COMPANY OF MINNESOTA, Fifth-Party Defendant and Appellant,

and

Milbank Insurance Company, Fifth-Party Defendant, Appellant and Appellee.

Civ. Nos. 10999, 11000 and 11019.

Supreme Court of North Dakota.

June 19, 1986.

Dosland, Dosland & Nordhougen, Moorhead, Minn., for Austin Mut. Ins. Co.; argued by J.P. Dosland.

Serkland, Lundberg, Erickson, Marcil & McLean, Fargo, for Tri-State Mutual Insurance and Milbank Ins.; argued by Paul F. Richard.

Cahill, Jeffries & Maring, Moorhead, Minn., for Tri-State Mut. Ins. Co.; Steven J. Cahill submitted on brief.

Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, Minn., for Milbank Ins. Co.; Paul E. Grinnell and Barry P. Hogan submitted on brief.

MESCHKE, Justice.

Three insurance companies seek review of the apportionment of their responsibilities for a judgment against their common insureds in a wrongful death action, which arose out of a truck collision. We affirm the trial court in part and reverse in part.

The Brakke family, while trucking sugarbeets from an adjacent field, deposited mud and dirt on the highway. A light rain exacerbated slippery conditions, causing Timothy Gilbert to lose control of his semi-truck and strike Russell Houser's semi-truck head-on. The jury found that the Brakkes' negligence was the sole cause of the accident that resulted in Houser's death and held the Brakkes liable to Houser's family for $378,000.[1]

Brakkes were insured by two vehicle policies, one issued by Tri-State which covered

---

1. Prior to trial, codefendants Timothy J. Gilbert and his employer, Harlin Fraedrich had settled with Houser's family. The jury exonerated them of any responsibility for Houser's death. Following the jury's conclusion that the Brakkes were solely responsible for the damages, Gilbert and Fraedrich sought to get their settlement back. In *Houser v. Gilbert*, 364 N.W.2d 62 (N.D. 1985), we held they could not renege on their settlement.

one truck and one issued by Milbank which covered the other two trucks. Brakkes also had a farm liability policy issued by Austin. Third-party disputes between these insurers were severed from the main action before trial.

Tri-State and Milbank moved for summary judgment against Austin, while Austin made a cross motion for summary judgment. Austin and Tri-State in turn sought a judgment declaring Milbank's liability to be $100,000 for each of its two insured vehicles rather than $100,000 for both vehicles.

No testimony was taken on these issues. The trial court had only the policies before it. The trial court concluded that the loss was caused by both vehicle-related acts (use of the trucks to deposit dirt and mud on the highway) and nonvehicle-related acts (failure to remove the mud from the highway once deposited or to warn of the danger), but held that the vehicle policies made Tri-State and Milbank primary insurers, while Austin's farm liability policy provided coverage on an excess basis. The court also determined that Milbank's liability limit was $100,000.

Tri-State and Milbank argue that the trial court erred in concluding that the vehicle policies provided coverage and also erred in holding Austin liable only on an excess basis. Austin and Tri-State argue that the court erroneously concluded that Milbank's liability was only $100,000.

We conclude that all three policies provided coverage and that the trial court did not err in holding that Milbank's liability was only $100,000. However, we hold that the trial court erred in holding that Austin was liable only on an excess basis.

## I. VEHICLE POLICIES COVERAGE

Milbank and Tri-State contend that the vehicle policies did not apply because the trucks involved were not being used for transportation purposes at the time of the accident and therefore the loss was not caused by "the maintenance or use of a motor vehicle as a vehicle."

We have said that in order for use of a vehicle to result in liability on the part of the insurance carrier, there must be a causal relationship between the use of the vehicle and the accident. The use "must be such use as arises out of the inherent nature of the automobile." *Norgaard v. Nodak Mutual Insurance Company,* 201 N.W.2d 871, 874 (N.D.1972). We found the requisite causal relationship lacking in *Norgaard* where the loss occurred by use of the vehicle as a bench rest for a rifle, not from use of the vehicle for transportation.

■ But, it is obvious here that the mud could not have been deposited on the roadway without use of the trucks. The causal connection is present and the trial court correctly held that the Tri-State and Milbank vehicle policies provided coverage for injuries caused by that vehicle-related activity.

## II. LIMITS OF ONE POLICY ON TWO VEHICLES

The declarations pages of the Milbank policy separately listed six vehicles insured under the policy, including two of the trucks used to haul sugarbeets. Each vehicle's coverage was separately listed as "BI–100/300." There is no disagreement that this is a shorthand reference for coverage of $100,000 for bodily injury damages sustained by any one person in any one automobile accident and for $300,000 maximum limit of liability for all damages for bodily injury resulting from any one automobile accident.

The policy included a "Limits of Liability" provision:

"The limit of liability shown in the Declarations for 'each person' for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for 'each person', the limit of liability shown in the Declarations for 'each accident' for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. The limit of liability shown in

the Declarations for 'each accident' for property damage liability is our maximum limit of liability for all damages to all property resulting from any one auto accident.

"This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the auto accident.

"We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change our total limit of liability."

It is uncommon, where a single policy covers more than one vehicle, that two or more of the covered vehicles are involved in a single occurrence. The question of "stacking" coverages under a single multi-vehicle policy normally arises where only one of the insured vehicles is involved in an accident. In that context, this court has held that a policy limitation prohibiting the stacking of uninsured motorist coverage is enforceable and observed that other courts which have addressed various aspects of stacking have come up with widely divergent conclusions. *St. Paul Mercury Insurance Company v. Andrews*, 321 N.W.2d 483, 489 (N.D.1982).

Stacking has often been allowed for medical payment and uninsured motorist coverages. But, when considering liability coverage "the courts, with near uniformity, have held the first party coverage cases [on medical payment and uninsured motorist coverages] to be inapplicable and have found the policy to be unambiguous and to preclude 'stacking.'" *Oarr v. Government Employees Insurance Company*, 39 Md.App. 122, 383 A.2d 1112, 1117 (1978). Preclusion of stacking is sensible where only one of the insured vehicles is involved. *Pacific Indemnity Company v. Thompson*, 56 Wash.2d 715, 355 P.2d 12 (1960). Generally, bodily injury coverage is automobile-based, rather than person-based, and "is clearly insurance on the vehicle...." *Oarr*, 383 A.2d at 1117.

But, decisions involving stacking of coverage under a single policy for several vehicles involved in the same occurrence have gone both ways, depending upon subtle policy differences. In *Inman v. Hartford Insurance Group*, 132 Mich.App. 29, 346 N.W.2d 885 (1984), two vehicles insured under the same policy were involved in a single accident. The Michigan intermediate appellate court held that a single limit applied, rejecting the reasoning of an earlier New York decision, *Loerzel v. American Fidelity Fire Insurance Company*, 204 Misc. 115, 120 N.Y.S.2d 159, *aff'd*, 281 App. Div. 735, 118 N.Y.S.2d 180 (1952).

The accident in *Loerzel* involved two trucks insured under one fleet policy that contained not only a "limits of liability" clause similar to the one in the Milbank policy, but also a "separability" clause. Finding that the two clauses together created an ambiguity, the New York court construed the ambiguity against the insurer and held that each vehicle involved was insured for the policy limit as if it were insured under a separate policy.

On the other hand, in *Inman*, the Michigan court concluded that since the policy before it contained no "separability" clause, no ambiguity existed, and the language in the "limits of liability" clause controlled, regardless of the number of insured vehicles involved in the occurrence. The trial court followed the *Inman* approach.

■ We concur. The "Limits of Liability" provisions in this policy leave little room for doubt: "This is the most we will pay *regardless of the number of covered* persons, claims made, vehicles or premiums shown in the Declarations, or *vehicles involved in the auto accident.*" [Emphasis supplied.] It is hard to imagine how Milbank could have made more clear that whether one or more of the vehicles were involved in the accident, Milbank's liability would be limited to $100,000 for bodily injuries sustained by one person in any one automobile accident. See e.g., *Link v. Federated Mutual Insurance Company*, 386 N.W.2d 897 (N.D.1986) ["In order to im-

pose liability ... we would have to strain the clear language of the policy."]

Accordingly, we agree with the trial court that the limit of Milbank's liability for Houser's death is $100,000.

### III. APPORTIONMENT AMONG POLICIES

The trial court determined that the loss "was not caused solely by the 'use, maintenance or operation' of the trucks, but was also caused by the risk involved in failure to remove the mud from the road.... There was also a failure to warn. The general policy and the auto risk policies are 'overlapping' and vehicle-related and nonvehicle-related acts have concurred to cause the damage found by the jury in this action." The trial court went on to conclude that the terms of the vehicle policies made Tri-State and Milbank primary insurers, but that Austin's liability policy provided coverage on an excess basis.

Austin concedes that it is liable under the general farm coverage for the loss caused by the failure to remove the mud and the failure to warn. However, Austin asserts that the trial court was correct in determining that Austin's "other insurance" clause absolves it from any primary liability where the loss arose from use of a vehicle.

Tri-State and Milbank assert that the loss should be apportioned between the vehicle-related acts and the nonvehicle-related acts, with Austin responsible for the nonvehicle-related acts and Tri-State and Milbank responsible for the vehicle-related acts. They seek a remand for further proceedings to determine this apportionment or a conclusion that "each insurer pay a pro-rata share of the judgment."

Allocation of losses for the same casualty between separate policies of the insured is largely a contract matter. *Kiefer v. General Casualty Company of Wisconsin*, 381 N.W.2d 205 (N.D.1986). Multiple coverages should be construed equitably in light of the particular facts of the case.

*P.L. Kanter Agency, Inc. v. Continental Casualty Company*, 541 F.2d 519, 521 (6th Cir.1976).

The "other insurance" clauses in the Tri-State and Milbank vehicle policies, differing only slightly in expression, each provide for "contribution by limits," thereby agreeing to share "in proportion that our limit of liability bears to the total of all applicable limits." The "other insurance" clause in the Austin farm liability policy also provides for "contribution by limits," but with a proviso:

"If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, *provided that with respect to loss arising out of the ownership, maintenance, operation, use, loading or unloading of* (1) *any automobile* or midget automobile at the premises or the ways immediately adjoining or (2) watercraft, *this insurance shall not apply to the extent that any valid and collectible insurance,* whether *on a primary,* excess or contingent *basis, is available to the insured."* (Our emphasis)

The trial court concluded that because the loss arose from the use of automobiles (trucks depositing mud on the highway while hauling sugarbeets from a field), this proviso applied and Austin's coverage was excess.

We might agree with that conclusion if the use of the vehicles were the sole cause of the accident [compare *Milbank Mutual Insurance Company v. Dairyland Insurance Company*, 373 N.W.2d 888 (N.D. 1985)]. But, we cannot agree that the proviso applies when the loss was caused by concurrent negligent acts, some of which were clearly nonvehicle-related. "Whenever such a non-auto risk is a proximate cause of an injury, liability attaches

to the insured, and coverage for such liability should naturally follow. Coverage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury." *State Farm Mutual Automobile Insurance Company v. Partridge*, 10 Cal.3d 94, 514 P.2d 123, 125, 109 Cal. Rptr. 811 (1973). See also *Indemnity Insurance Company of North America v. Citizens Mutual Automobile Insurance Company*, 41 Mich.App. 133, 199 N.W.2d 678 (1972).

Minnesota holds that there is concurrent coverage under both an auto policy and a general liability policy where a vehicle-related act of negligence and a nonvehicle-related act of negligence are involved in the same accident. *Jorgensen by Jorgensen v. Auto-Owners Insurance Company*, 360 N.W.2d 397 (Minn.Ct.App.1985); *North Star Mutual Insurance Company v. Johnson*, 352 N.W.2d 791 (Minn.Ct.App. 1984); *Waseca Mutual Insurance Company v. Noska*, 331 N.W.2d 917 (Minn.1983). This concurrent primary coverage construction is consonant with our precedents. *Kunze v. State Farm Mutual Automobile Ins. Co.*, 197 N.W.2d 685, 694–696 (N.D. 1972) and *State Farm Mutual Automobile Insurance Co. v. American Casualty Co.*, 433 F.2d 1007 (8th Cir.1970). It's appropriate and equitable in this case because not all of the loss arose from use of vehicles. Therefore the whole loss does not fully and clearly fall within the language of the proviso.

■ Therefore, we conclude that the trial court erred in construing the Austin "other insurance" clause to provide coverage only on an excess basis. Under the facts of this case, Austin is clearly the insurer for the nonvehicle-related acts and Tri-State and Milbank are the insurers for the vehicle-related acts. It is not practical to apportion the loss between these concurrent acts. Thus, each insurer's coverage is direct and primary for the same loss. Each policy recognizes "contribution by limits" for primary coverage with other insuranc-

es. Accordingly, we hold these insurance companies must share pro rata in paying the judgment against their common insureds in the proportion that the separate limits of their respective coverages bear to the total of the limits of all three policies.

The judgments are affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

ERICKSTAD, C.J., GIERKE, J., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.

VANDE WALLE, Justice, concurring in part and dissenting in part.

I concur in Parts I and II and dissent to Part III of the majority opinion.

This is not a case in which the policies are repugnant to one another, i.e., in which each policy disclaims liability insofar as there is another policy which provides coverage. Rather, Austin has conceded liability and thus the issue before us is whether the coverage is to be prorated or whether it is excess, not one of coverage or a duty to defend. Many of the cases relied upon in the majority opinion are concerned with whether or not the general liability policy provides any coverage or whether or not it creates any duty to defend. It seems to me that the plain wording of the policy which makes the coverage excess if the loss arises out of the ownership, maintenance, operation, use, loading, or unloading of the automobile is sufficient to affirm the trial court's decision. I realize the theory is that the damage which arose as a result of the negligent failure to remove the mud from the road or to warn of the danger are not losses arising out of the use of the automobile. But I believe that the losses arose out of the "ownership, maintenance, operation, use, loading or unloading" of an automobile within the meaning of the Milbank and Tri-State policies for the purpose of determining primary coverage, and that

but for the mud deposited on the road by the insured vehicles, the loss would not have occurred.

The majority opinion concludes that it is not practical to apportion the loss between the concurrent acts, but Tri-State and Milbank conceded that if they prevailed on this issue the loss should be apportioned between vehicle-related acts and nonvehicle-related acts. A contrary conclusion seems to simply illustrate the fact that the distinction is inapposite for this purpose and that we should be guided by the clear wording of the policy as to excess coverage.

I would affirm the trial court on this issue.