**TRANSAMERICA, Plaintiff and Appellee,**

v.

**FARMERS INSURANCE EXCHANGE, a Reciprocal or Inter–Insurance Exchange, Defendant and Appellant.**

**Civ. No. 900100.**

Supreme Court of North Dakota.

Nov. 29, 1990.

Zuger Law Offices, Bismarck, for plaintiff and appellee; argued by Paul J. Bowlinger.

Lucas and Smith, Bismarck, for defendant and appellant; argued by A. William Lucas.

MESCHKE, Justice.

We are asked to choose which liability insurer covers a pedestrian's claim for the insured's dog biting her in the face when she walked by the insured's pickup on a public street. The trial court ruled that the insured's pickup insurer, Farmers Insurance Exchange, "is responsible to provide primary coverage," leaving the insured's mobile home insurer, Transamerica Insurance Companies, with excess coverage. We affirm but modify, holding that both insurers, concurrently and proportionately, share responsibility.

The insured, Robert Anheluk, and his dog, Sam, left his residence in Dickinson one Friday afternoon to drive to his mobile home at Skunk Bay for the weekend. On the way, Anheluk stopped for refreshments at the Esquire Club in Dickinson and parked his pickup on the street nearby. Anheluk left Sam to wait in the open pickup box, telling him to "stay." While Sam waited in the pickup box, he bit a pedestrian in the face when she paused on the adjacent sidewalk. The pedestrian sued Anheluk for her injury.

Transamerica defended the pedestrian's lawsuit for Anheluk because its policy on his mobile home covered bodily injury "caused by an animal owned by YOU or in YOUR care." During discovery, Transamerica learned that Sam bit the pedestrian while the dog waited in the pickup box. With the pedestrian's lawsuit still pending, Transamerica sought a separate judgment against Farmers, the pickup liability insurer, to declare that Farmers should be the primary insurer for the dog bite claim, and that "Transamerica should only be liable to the extent that any judgment is entered . . . in excess of the Farmer's . . . policy limits." After trial of the declaratory action, the trial court concluded "that the underlying tort action of the pedestrian arose out of the use of the pickup and therefore [Farmers] is responsible to provide primary coverage." Farmers appealed.

On appeal, Farmers argues that the insured's potential liability arose solely from the insured keeping "a vicious dog with a predisposition to bite people," because the dog had bitten other people before. *See Sendelbach v. Grad,* 246 N.W.2d 496 (N.D.1976) (Homeowner not liable to visitor for dog bite unless vicious propensity was known). Farmers argues that the insured's potential liability did not arise out of "ownership, maintenance or use" of the pickup, activities insured by Farmers, because the "pickup was merely the situs of the incident." Farmers asks us to reverse because "there is no causal connection between the dog bite incident and the use of the pickup."

Elsewhere, decisions have varied on whether there is enough causal relationship between a dog bite and the use of a vehicle to make the vehicle liability insurer responsible for the claim for injury. *See Alvarino v. Allstate Insurance Co.,* 370 Pa.Super. 563, 537 A.2d 18 (1988) (Affirmed judgment on the pleadings in favor of the insurer because a vehicle insurer is not liable under Pennsylvania No–Fault Act for a dog bite of a passenger in a vehicle); *American States Insurance Co. v. Allstate Insurance Co.,* 484 So.2d 1363 (Fla. App. 5 Dist.1986) (Affirmed judgment for vehicle liability insurer because the insurer is not liable on a claim for a dog bite when the dog was "merely along for the ride" in the truck); *Hartford Accident & Indemnity Co. v. Civil Service Employees Insurance Co.,* 33 Cal.App.3d 26, 108 Cal.Rptr. 737 (1973) (Reversed judgment for an auto insurer because the auto insurer is responsible for claim of a passenger bitten by accompanying dog while alighting from the car); *National Indemnity Co. v. Corbo,* 248 So.2d 238 (Fla.App. 3 Dist.1971) (Affirmed judgment against auto liability insurer as responsible for a claim of a passenger bitten by a guard dog being transported from the insured's home to insured's business). We turn to our own precedents on the causal relationship between use of a vehicle and a liability claim.

In *Houser v. Gilbert,* 389 N.W.2d 626 (N.D.1986), an insurer argued that a claim-

ant's injury was not caused by the "use" of the insured trucks although the trucks had deposited mud and dirt on the highway, later made slippery by a rain. The insurer's argument was that, at the time the claimant lost control of his vehicle on the mud-covered highway, the insured trucks were not involved and were not being used for transportation purposes. We explained that

> in order for use of a vehicle to result in liability on the part of the insurance carrier, there must be a causal relationship between the use of the vehicle and the accident. The use "must be such use as arises out of the inherent nature of the automobile." *Norgaard v. Nodak Mutual Insurance Company,* 201 N.W.2d 871, 874 (N.D.1972). We found the requisite causal relationship lacking in *Norgaard* where the loss occurred by use of the vehicle as a bench rest for a rifle, not from use of the vehicle for transportation.

*Houser,* 389 N.W.2d at 628. We affirmed a trial court finding in *Houser* that a "causal connection [was] present" because "the mud could not have been deposited on the roadway without use of the trucks." *Id.* at 628. Similarly, the trial court determined that a causal connection was present in this case.

> The trial court found in this case that transport for the animal is ... what was being done here. The stationary position of the vehicle or the physical function of motion, i.e., "operation," is not the issue. The functional word here is the word use. That word is not defined or limited by language in the policy and is thus entitled to a broad definition. This definition includes the facts in this instance.

Carrying household pets is a common use of family vehicles. The dog, Sam, would not have been close enough to the public sidewalk to bite a pedestrian in the face without use of the pickup to haul the dog and to hold the dog while waiting. We agree with the trial court's finding that a causal connection is present here. *See also Milbank Mutual Insurance Co. v. Dairyland Insurance Co.,* 373 N.W.2d 888 (N.D.

1985) (Unloading hay bales from a stopped farm truck was use that "arose out of the inherent nature of the truck" for coverage by truck insurer of insured's potential liability for death of helpful friend). Because there is a sufficient causal relationship, we affirm the trial court's holding that the vehicle liability policy issued by Farmers obliges it to cover the pedestrian's claim for injury.

■ Farmers also argues that, if it is responsible for the pedestrian's claim, it should not be the sole or primary insurer, but rather that the responsibility should be apportioned or shared concurrently between available policies. Transamerica responds that its policy contains an "other insurance" clause that makes its coverage excess, not primary, so that there can be no concurrent apportionment.

Allocation of losses for the same casualty between separate policies of one insured is largely a contractual matter, equitably construed. *Houser,* 389 N.W.2d at 630. 16 Couch on Insurance 2d (Rev. ed.) § 62:6 at 441 (1983) ("Generally, when two insurers provide insurance on the same loss, the question of their respective obligations is determined by construction of the language used by the respective insurers, and not upon any arbitrary rule or circumstance"). In *Houser,* we held that two vehicle policies and a general liability policy concurrently insured against claims that arose from both vehicle acts and a nonvehicle act. 389 N.W.2d at 630. We concluded that "[i]t is not practical to apportion the loss between these concurrent acts" and ruled that "each insurer's coverage is direct and primary for the same loss." *Id.* at 631. Similarly here, a vehicle act, use of the pickup, and a nonvehicle act, ownership of the dog, concurrently contributed to this injury. In this case, the insurance contracts have apportioned the concurrent coverage for the injury.

The relevant clause in Transamerica's policy is:

OTHER INSURANCE

Occasionally other insurance pays YOU or pays for the loss or damage which is

also insured by this policy. When this happens, the following rules apply:

If the other insurance isn't provided by US, WE'LL pay only for OUR share of any coverage for any loss or damages in excess of any applicable deductibles. *OUR share is determined by adding up the limits or amounts of all collectible insurance benefits and finding the percentage of the total which OUR limits or amount represents.* This policy is excess coverage for Comprehensive Personal Effects Coverage if there is other insurance coverage which will pay first. After the other policy has paid up to its limit, OUR policy will provide coverage up to its amount, but not exceeding the remainder of YOUR loss. (Emphasis added).

The excess provision for Comprehensive Personal Effects Coverage is not apropos here. The pertinent part of Transamerica's clause, applicable to Personal Liability Coverage, agrees to share coverage in proportion to the limits of all applicable policies.

The relevant clause in Farmers's policy also agrees to share liability in proportion to all applicable limits:

B. Other Insurance, Priority of Payments, Non–Duplication of Benefits

No eligible injured person shall recover duplicate benefits for the same elements of loss under this or any similar insurance, including approved plans of self-insurance. If there is other applicable personal injury protection insurance on any other policy that applies to a loss covered by this part, we will pay only our share. *Our share is the proportion that our limit of liability bears to the total of all applicable limits* including approved plans of self insurance. But the maximum recovery shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit. (Emphasis added).

Each policy agrees to "contribution by limits" when there is other applicable insurance.

Accordingly, we hold that Farmers and Transamerica must share pro rata in covering and defending their common insured in the proportion that the separate limits of their respective policies bear to the total limits of both policies. We affirm the judgment making Farmers's policy responsible to cover the pedestrian's claim. We modify the judgment making Transamerica's policy excess coverage only. Upon remand, we direct entry of a declaratory judgment that Farmers and Transamerica share proportionately in covering and defending their insured from the pedestrian's claim.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

VANDE WALLE, Justice, concurring in part and dissenting in part.

I concur in the portion of the majority opinion which concludes that Farmers Insurance Exchange is responsible to provide primary coverage. Insofar as it concludes that Transamerica's coverage was primary and must share proportionately in coverage according to the limits of its policy, I dissent from that portion of the majority opinion which reverses the determination of the trial court that Transamerica's coverage was excess.

The trial court did not consider the issue of whether or not the responsibility should be apportioned or shared concurrently. Furthermore, counsel for Farmers Insurance Exchange when questioned concerning this matter at oral argument, concluded that here, contrary to the finding of the majority opinion, the responsibility should be apportioned. The determination of the majority to not only reach, but decide, this issue suggests an intent to rewrite contracts of insurance to achieve what the majority perceives to be a desired result. Although the majority professes to agree that "[a]llocation of losses for the same casualty between separate policies of one insured is largely a contractual matter," it adds the seemingly innocuous but highly subjective reservation, "equitably construed." It is under this guise that the majority appears to rewrite contracts of insurance to achieve its perception of an "equitable result," *i.e.,* notwithstanding the language of the insurance contract, insur-

ers providing separate policies to one insured will be required to defend and provide coverage to the common insured in the proportion that the separate limits of their respective policies bear to the total limits of both policies.

In *Houser v. Gilbert,* 389 N.W.2d 626 (N.D.1986), I dissented to that portion of the majority opinion which reversed the trial court's determination that one of the policies involved therein provided coverage only on an excess basis. In that dissent I observed that the "plain wording of the policy which makes the coverage excess ... is sufficient to affirm the trial court's decision." *Houser v. Gilbert, supra* at 631 (VandeWalle, J., concurring in part and dissenting in part). Assuming that the majority is correct that the excess coverage provision in Transamerica's policy "is not appropos here," the action by the majority in this instance is nevertheless similar to that of the *Houser* majority wherein the insurance companies conceded that if they prevailed on the issue of primary coverage, the loss should be apportioned between vehicle-related acts and nonvehicle-related acts, but the majority found that could not be accomplished. Although in that instance I disagreed that the loss should be apportioned, if apportionment is required because both policies are primary, an attempt should be made to apportion according to the acts for which the policies provide coverage. That attempt has not been made or even considered by the trial court.

Despite contractual language in the policies to the contrary, the lesson of this opinion, when read with the opinion in *Houser,* is that a majority of this Court will impose a form of joint and several responsibility for coverage upon an individual's insurers notwithstanding the provisions of the insurance contracts and the particular facts of the loss.

In each case we attempt to achieve a just result as dictated by the facts of the case and the existing law. Those results ought not be foreordained by judges' perceptions of an equitable result. If the determination of the trial court is to be reversed it should be reversed only to the extent of

remanding for a determination of whether or not Transamerica's coverage is excess coverage and, if it is not, whether or not the responsibility for the loss may be apportioned according to the acts for which the policies provide coverage.