627 F.2d 792
 Donald R. SMITH, Treasurer, State of Illinois, and Michael
J. Bakalis, Comptroller, State of Illinois,
Plaintiffs-Appellees,
v.
WIDMAN TRUCKING & EXCAVATING, INC., and Jean Pomagalski,
S.A., Defendants-Appellants.
 No. 79-2479.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 29, 1980.
Decided Aug. 1, 1980.
As Amended Aug. 27, 1980.
 
 Al J. Pranaitis, Alton, Ill., for defendants-appellants.
 John H. Germeraad, Asst. U. S. Atty., Springfield, Ill., for plaintiffs-appellees.
 Before CASTLE, Senior Circuit Judge, and SPRECHER and WOOD, Circuit Judges.
 SPRECHER, Circuit Judge.
 
 
 1
 Widman Trucking & Excavating, Inc. (Widman) and Jean Pomagalski, S.A. (Pomagalski), defendants in this statutory interpleader action, appeal from the district court's October 5, 1979 decision finding the Small Business Administration (SBA) entitled to funds previously distributed to Widman, Pomagalski and other defendants.[1] Widman and Pomagalski contend that the district court abused its discretion in setting aside its December 22, 1977 order distributing the fund. They also contend that the court lost jurisdiction over the fund and the parties when the fund was distributed pursuant to the December 22, 1977 order. Finally, they contend that the court erred in finding the SBA entitled to all of the fund,[2] rather than ordering a pro rata distribution. We find these contentions without merit and therefore affirm the decision of the district court.
 
 
 2
 * The interpleaded fund arose from an Illinois Court of Claims judgment in favor of Donald Caplan and Pere Marquette Ski Corporation (Marguette) entered on February 14, 1977. The State of Illinois was aware of conflicting claims to the amount awarded and therefore filed this statutory interpleader action on September 27, 1977, and deposited the fund with the district court. On December 21, 1977, after answers had been filed by the various defendants, the district court was informed that the parties had agreed to a distribution of the fund. An order embodying the agreement was prepared by counsel for Widman and entered by the court on December 22, 1977.[3] The fund was distributed on that day.
 
 
 3
 Donald Caplan filed a motion to set aside this order of distribution under Fed.R.Civ.P. 60(b)(1) on March 2, 1978. The motion was argued on April 12, 1978. On September 7, 1978, the district court set aside its order of December 22, 1977, and on October 5, 1979, the court entered the order appealed from, finding the initial distribution in error and awarding $73,311.48 to the SBA. After denial of a motion to reconsider, Widman and Pomagalski brought this appeal.
 
 
 4
 The facts underlying the various claims to the fund and the facts underlying Caplan's Rule 60(b)(1) motion will be noted where relevant in the discussion that follows.
 
 II
 
 5
 Caplan moved to set aside the stipulated judgment of December 22, 1977, under Fed.R.Civ.P. 60(b)(1),[4] alleging that it had been entered without his actual consent and authorization due to a misunderstanding between his regular counsel and local trial counsel. The motion was supported by affidavits of both attorneys setting out the details of their misunderstanding. No affidavit was filed by Caplan himself.
 
 
 6
 * Rule 60(b) is to be used to disturb the finality of judgments only on narrow grounds and upon a showing of exceptional circumstances. See Brennan v. Midwestern United Life Insurance Co., 450 F.2d 999, 1003 (7th Cir. 1971), cert. denied, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); Mayberry v. Maroney, 529 F.2d 332, 335 (3d Cir. 1976). The rule is not intended to enable litigants to avoid the consequences of a decision to settle or compromise which in retrospect appears unfortunate. See Sampson v. Radio Corporation of America, 434 F.2d 315, 317 (2d Cir. 1970); Sadowski v. Bombardier Ltd., 539 F.2d 615, 618 (7th Cir. 1976). Rule 60(b) is, however, to be liberally interpreted in favor of setting aside judgments upon a proper showing of mistake, inadvertence, surprise or excusable neglect. See Beshear v. Weinzapfel, 474 F.2d 127, 131 (7th Cir. 1973). The decision whether a proper showing has been made is committed to the sound discretion of the district court. See Bradford Exchange v. Trein's Exchange, 600 F.2d 99, 102 (7th Cir. 1979). A district court's decision to grant or deny a Rule 60(b) motion will be reversed on appeal only if it is shown that the court abused its discretion. See Ben Sager Chemicals International, Inc. v. E. Targosz & Co., 560 F.2d 805, 809 (7th Cir. 1977). An abuse of discretion is established only where no reasonable man could agree with the district court; if reasonable men could differ as to the propriety of the court's action, no abuse of discretion has been shown. See Beshear, supra, 474 F.2d at 134.
 
 
 7
 While neither ignorance nor carelessness by a party or his attorney is a proper basis for Rule 60(b) relief, Ben Sager, supra, 560 F.2d at 809, courts are reluctant, under certain circumstances, to attribute to a client the mistakes of his attorney. See A. F. Dormeyer Co. v. M. J. Sales & Distributing Co., 461 F.2d 40, 42 (7th Cir. 1972). Upon a proper showing, even a consent judgment may be set aside under Rule 60(b). See Fleming v. Huebsch Laundry Corp., 159 F.2d 581 (7th Cir. 1947); Associates Discount Corp. v. Goldman, 524 F.2d 1051 (3d Cir. 1975); Thomas v. Colorado Trust Deed Funds, Inc., 366 F.2d 136 (10th Cir. 1966). In particular, a consent judgment shown to have been entered without express authority from the client or without the client's actual consent may be the subject of Rule 60(b) relief. This court recently set out the governing legal principles for such cases:
 
 
 8
 An attorney may not consent to a final disposition of his client's case without express authority. . . . Although an attorney of record is presumed to have his client's authority to compromise and settle litigation, a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry.
 
 
 9
 Bradford Exchange, supra, 600 F.2d at 102 (citations omitted). See also Associates Discount, supra, 524 F.2d at 1053; Thomas, supra, 366 F.2d at 139. The question in this case, therefore, is whether the district court was presented with affirmative proof that the December 22, 1977 judgment was agreed to by Caplan's local trial counsel without Caplan's consent or authorization.
 
 
 10
 Comparison of the facts presented in this case with those presented in our recent decision in Bradford Exchange, supra, reveals that the district court was well within its discretion in granting the motion to vacate. In Bradford Exchange, the defendant moved under Rule 60(b) to modify a portion of a judgment to which its attorney had agreed, alleging that the attorney had misunderstood his instructions with respect to acceptable settlement terms. The defendant submitted the affidavit of its manager, relating what the attorney's instructions had been, and the affidavit of the attorney, relating his mistaken interpretation of the instructions. The district court found the affidavits unpersuasive and denied the motion. This court reversed, finding that the defendant had presented affirmative evidence that its attorney had consented to the settlement at issue without express authority.[5]
 
 
 11
 In this case, Caplan's motion and the affidavits of his attorneys set forth a misunderstanding not directly between attorney and client as in Bradford Exchange, but rather between the client's two attorneys. The district court had before it the motion, the attorneys' affidavits and the correspondence between the attorneys, attached as exhibits to the affidavits.[6] These materials served precisely the purpose served by the affidavits in Bradford Exchange : they explained to the court the alleged misunderstanding and how it came about. Widman and Pomagalski contend that the evidence reveals that the true motivation for Caplan's motion was not a misunderstanding between attorneys, but rather an after-the-fact realization that the December 22, 1977 judgment left Caplan personally liable to the SBA for a substantial sum. There is evidence in the record which might support this characterization and we cannot say that Caplan's proof is of such persuasive force that had the district court denied the motion, we would be willing to reverse for abuse of discretion. We are not, however, faced with this issue. The district court found the materials submitted by Caplan to be persuasive and granted the motion. We can find no abuse of discretion in this decision to grant the motion to vacate. At the very least, reasonable men could differ as to the propriety of the district court's action; accordingly, we may not reverse that decision.
 
 B
 
 12
 Widman and Pomagalski direct much of their attention on this appeal to an attack upon the admissibility of the evidence presented through the attorneys' affidavits. They contend that the affidavits consist almost entirely of inadmissible hearsay. While this contention may be accurate with respect to some of the affidavit evidence, it is not accurate with respect to much of that evidence. Much of the evidence in the affidavits is not inadmissible hearsay because it was offered not to prove the truth of the matter asserted, but rather to illustrate the misunderstanding between counsel by relating the communications between them and the impressions formed as a result thereof. This evidence would be admissible for the limited purpose it was intended to serve. Indeed, it is difficult to conceive of an alternative method of proving that the alleged misunderstanding in fact occurred. The affidavits presented sufficient admissible evidence to support the district court's decision.
 
 
 13
 More important, we have been unable to discover in the record before us any objection by any party in the court below to these affidavits. A number of parties, including Widman and Pomagalski, submitted memoranda and affidavits in opposition to Caplan's motion. In none of these materials was any objection expressed with respect to the admissibility of the affidavit evidence. The affidavits were challenged as alleging a legally insufficient basis for Rule 60(b)(1) relief, but not as containing inadmissible hearsay matter. In addition, none of the briefs filed in this court suggests that any evidentiary objection was brought to the attention of the district court. This failure to object below is fatal to the evidentiary arguments of Widman and Pomagalski in this court.
 
 
 14
 It is clear in this circuit that affidavits submitted in support of a Rule 60(b) motion, even if they would not have been admissible over objection, may, in the absence of objection, be considered by the district court for whatever evidentiary value they might possess. See Jones v. Jones, 217 F.2d 239, 242 (7th Cir. 1954). It is equally clear that under such circumstances, an objection to the propriety of the affidavits will not be considered on appeal where no objection was made in the district court. Id. Thus, even if the affidavits do consist primarily of inadmissible hearsay as Widman and Pomagalski assert, which we believe is not the case, this objection may not be raised for the first time in this court.
 
 C
 
 15
 Motions under Rule 60(b)(1) must be filed within a reasonable time, not to exceed one year, after entry of the judgment at issue. Fed.R.Civ.P. 60(b). Caplan filed his Rule 60(b)(1) motion approximately 10 weeks after entry of the December 22, 1977 distribution order. Widman and Pomagalski contend that Caplan did not file the motion within a reasonable time and that they were prejudiced by the delay.
 
 
 16
 We find this argument without merit. Caplan's motion was filed well within the maximum time period. Although the district court did not expressly address the issue, its decision to grant the motion reveals that it apparently did not believe that Caplan had unreasonably delayed filing the motion. On appeal, Widman and Pomagalski merely assert that the delay was "entirely unreasonable" without explaining the basis for this assertion. They identify several respects in which they were allegedly prejudiced by the delay. The instances identified, however, do not allege prejudice due to delay but rather prejudice due to the fact that the initial distribution was set aside at all.[7] There is no basis in this record for finding that the district court abused its discretion by entertaining this Rule 60(b)(1) motion 10 weeks after entry of judgment.
 
 III
 
 17
 This suit was filed as a statutory interpleader action under 28 U.S.C. § 1335.[8] The statute requires that the fund at issue in an interpleader suit or a bond in that amount be deposited with the district court by the plaintiff. 28 U.S.C. § 1335(a)(2). Such deposit is necessary for the district court to acquire jurisdiction over the action. See Miller & Miller Auctioneers, Inc. v. G. W. Murphy Industries, Inc., 472 F.2d 893, 895 (10th Cir. 1973). In the instant case, it is undisputed that the fund was properly deposited with the court by the State of Illinois at the commencement of the litigation and that the district court possessed jurisdiction at that time. Widman and Pomagalski contend, however, that because the fund was distributed on December 22, 1977, the court was thereafter without jurisdiction to enter any order with respect to distribution of the fund. It is therefore argued that the court had no power to enter its orders of September 7, 1978, and October 5, 1979.
 
 
 18
 It is a fundamental principle of federal procedure that the existence of jurisdiction is determined as of the filing of the complaint:
 
 
 19
 (T)he sufficiency of jurisdiction should be determined once and for all at the threshold and if found to be present then should continue until final disposition of the action.
 
 
 20
 Dery v. Wyer, 265 F.2d 804, 808 (2d Cir. 1959). If jurisdiction exists at the outset of a suit, subsequent events will not divest the court of jurisdiction. Thus, for example, where jurisdiction is founded on diversity, if the parties were of diverse citizenship when the complaint was filed, subsequent changes in citizenship are of no jurisdictional significance. See Smith v. Sperling, 354 U.S. 91, 93 n.1, 77 S.Ct. 1112, 1113 n.1, 1 L.Ed.2d 1205 (1957); 1 Moore's Federal Practice P 0.74(1), at 707.1 to 707.3. Similarly, where the proper jurisdictional amount exists when jurisdiction is first invoked, subsequent events which have the effect of reducing the amount in controversy to less than the jurisdictional minimum do not divest the court of jurisdiction. See State Farm Mutual Automobile Insurance Co. v. American Casualty Co., 433 F.2d 1007, 1009 (8th Cir. 1970); Lynch v. Porter, 446 F.2d 225, 228 (8th Cir. 1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 711, 30 L.Ed.2d 739 (1972); 1 Moore's Federal Practice P 0.91(3), at 850-51.
 
 
 21
 These principles are controlling in this case. It is clear that a Rule 60(b) motion is considered ancillary to or a continuation of the original suit; the motion thus requires no independent jurisdictional ground. See Bankers Mortgage Co. v. U. S., 423 F.2d 73, 78 (5th Cir.), cert. denied, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970); 7 Moore's Federal Practice P 60.28(3), at 406. If the district court had jurisdiction when the original suit was filed, it has jurisdiction to entertain a Rule 60(b) motion. This jurisdiction is not divested by subsequent events.
 
 
 22
 Application of these principles is illustrated in a case very similar to the one before us. In Kelly v. Greer, 334 F.2d 434 (3d Cir. 1964), the district court possessed jurisdiction over the original action because certain property was located within its district. The suit was settled by consent and the property on which jurisdiction had been based was subsequently removed from the district. The plaintiff later moved to vacate the order of dismissal. The district court denied the motion, holding that removal of the property deprived it of jurisdiction. The Third Circuit reversed, finding it clear that the district court had jurisdiction to vacate its own orders despite removal of the property. Id. at 436. The court of appeals went on to state:
 
 
 23
 (T)here can be no question of the power of a Federal district court to vacate its own orders entered in civil actions over which it had original jurisdiction "whenever such action is appropriate to accomplish justice."
 
 
 24
 Id. at 436-37 (citation omitted). The instant case is essentially indistinguishable from Kelly and is governed by the principles outlined above. It is undisputed that the district court originally had jurisdiction over this suit and, as discussed in Part II, supra, this is an appropriate case for Rule 60(b) relief. The Rule 60(b) motion is merely a continuation of the original suit. Subsequent events affecting facts which would be of jurisdictional significance if this were a newly filed action cannot divest the district court of jurisdiction to vacate its own order entered in this action. Accordingly, we hold that the district court had jurisdiction to vacate its December 22, 1977 order and to enter the order which is the subject of this appeal.
 
 IV
 
 25
 In distributing the fund and awarding $73,311.48 to the SBA, the district court applied a "first in time, first in right" rule to determine priority among the claims of the various defendants. The court carefully examined the evidence with respect to each of the defendants' claims and concluded that the claim of the SBA was first in time vis-a-vis the other claims, apart from that of Charles Delano, see note 2 supra, and thus was entitled to priority. On appeal, Widman and Pomagalski do not suggest that the district court erred in its determination that their claims were subsequent in time to that of the SBA and do not challenge the validity of the SBA's claim. Rather, in their brief treatment of the merits of the district court's order, they contend only that the court should have ordered a pro rata distribution because such a distribution would be more equitable in light of the facts of this case. See Brief of Appellants at 27-29. We conclude that the district court properly applied a "first in time, first in right" priority rule in this case and we therefore affirm.
 
 
 26
 It is clear that in a priority contest to which a federal instrumentality is a party, the relative priority of the various claims is determined by reference to federal law. See U. S. v. Equitable Life Assurance Society, 384 U.S. 323, 330, 86 S.Ct. 1561, 1565, 16 L.Ed.2d 593 (1966); Director of Revenue v. U. S., 392 F.2d 307, 312 (10th Cir. 1968). In particular, where the federal instrumentality is the SBA, the federal common law rule of "first in time, first in right" is applied to determine relative priority. See Director of Revenue, supra, 392 F.2d at 312-13; In re Lehigh Valley Mills, Inc., 341 F.2d 398, 400-01 (3d Cir. 1965); U. S. v. Eklund, 369 F.Supp. 1052, 1054 (S.D.Ill.1974).[9] In this case, the district court was faced with conflicting claims to the interpleaded fund. Two of the parties asserting claims the SBA and the Internal Revenue Service were federal instrumentalities. The district court therefore properly applied the federal common law priority rule of "first in time, first in right."
 
 
 27
 The arguments advanced by Widman and Pomagalski in opposition to this rule of priority are unpersuasive. They present no support for the method of distribution employed in the December 22, 1977 order. The case they cite in support of pro rata distribution, Hebel v. Ebersole, 543 F.2d 14 (7th Cir. 1976), is clearly inapplicable in the context of this case. No federal instrumentality was a party in Hebel and thus the federal common law priority rule was not at issue. The general assertion by Widman and Pomagalski that interpleader actions are equitable in nature and should be governed by equitable principles is similarly unavailing. The circumstances which they identify as calling for application of equitable principles, see Brief of Appellants at 28, present no basis for abandoning the applicable federal rule of priority. Furthermore, even if we were to accept their suggestion that so-called equitable principles take precedence in this case, no different result would be warranted because it has not been shown that equitable principles would require pro rata distribution. As the Third Circuit has held:
 
 
 28
 The rule of Federal common law is the general equitable principle, "first in time is the first in right."
 
 
 29
 Lehigh Valley Mills, supra, 341 F.2d at 401 (citation omitted) (emphasis supplied). Widman and Pomagalski have presented this court with no basis for reversing the district court's order applying the federal common law rule of priority.
 
 
 30
 In applying this priority rule, the district court examined each of the claims to the fund and established for each a date from which relative priority would be determined. The district court held, after careful analysis, that the SBA's claim was first in time vis-a-vis all other claims, save that of Delano. As noted above, Widman and Pomagalski have not challenged this determination in their briefs and argument before this court. We have nonetheless reviewed the record in this case and find that the district court's decision with respect to this issue is amply supported by the evidence and is not clearly erroneous. See Fed.R.Civ.P. 52(a). We hold, therefore, that the district court properly applied the "first in time, first in right" priority rule to this action and properly determined that, under this rule, the SBA's claim was entitled to priority over the claims of Widman and Pomagalski. Accordingly, we affirm the district court's order awarding $73,311.48 to the SBA.
 
 
 31
 We have considered all of the arguments raised in this appeal and find them without merit. We conclude, for the reasons outlined above, that the district court's decision should be affirmed in all respects.
 
 
 32
 AFFIRMED.
 
 
 33
 HARLINGTON WOOD, Jr., Circuit Judge, dissenting.
 
 
 34
 It is only on the issue of "abuse of discretion" with which I disagree with the majority analysis, and would reverse on that basis.
 
 
 35
 My view of this case, however, in these circumstances is somewhat self-defeating since our standard of review permits us to find an abuse of discretion only where no reasonable person would adopt the view of the trial court. Beshear v. Weinzapfel, 474 F.2d 127, 134 (7th Cir. 1973). Giving ourselves the benefit of being considered reasonable persons, which some may question, it is obvious that our opposing views about the issue dictate that no abuse of discretion can be found. Nevertheless, I prefer to express in part a contrary view.
 
 
 36
 As Judge Pell makes clear in Beshear, 474 F.2d at 134, it is not our function on appeal to merely take the position we would have taken had we been the trial judge. In applying our abuse of discretion standard, however, I see nothing wrong in starting at that point, but more is required.
 
 
 37
 I am concerned with this case for the precedent which it establishes which permits the sacrifice of finality because of an alleged misunderstanding between co-counsel when there are significant gaps left in the record. I prefer to remain free to argue in the future that though Rule 60(b) is to be liberally applied when all the circumstances are known and fairly considered, it is not to be loosely applied. I believe loose application will permit Monday morning quarterbacking and will only breed indifference to careful handling of litigation if there is always to be an easy available way out after final judgment. I do not disagree in general with the majority about the law, only with its application.
 
 
 38
 Caplan's motion to set aside the original judgment was a verified motion by his principal counsel from St. Louis. Nowhere in this record is there any affidavit by Caplan himself, the client, stating what he had authorized his attorneys to do or not to do in his behalf. We are passing judgment on this matter without a single word from the client, only his agents. Did Caplan himself for some reason originally authorize the stipulated judgment or didn't he? If, however, it is to be only Caplan's two counsel, his principal counsel and local counsel, to whom we are to look for an explanation, then we should carefully examine what they say about it.
 
 
 39
 In the motion of Caplan's principal counsel concerning the alleged misunderstanding between himself and Caplan's local counsel in Springfield, he alleges only that he "believes" that in an initial telephone call in November 1978 he outlined to Springfield counsel the position of Caplan with regard to his relationship with the Small Business Administration. He does not allege that he did in fact inform Springfield counsel. He equivocates. That motion was prepared within about four months of that initial telephone call. If the issue is so important as to justify setting final judgment aside, I believe it only fair to ask for something more definite from Caplan's principal counsel, particularly when his client is totally silent. On the other hand, Caplan's local counsel's affidavit states that during that telephone call principal counsel only gave him the "general background" of the case, the necessity of entering an appearance in the Springfield interpleader suit, and further that the original attorney's lien was not to be contested. Lacking in that affidavit is any mention that the details of the SBA relationship were discussed or what was to be done about it. In fact, after that November telephone call the local counsel, after attending a preliminary hearing before the trial judge, wrote to the principal counsel in early December stating that the "only question to be resolved was whether or not the SBA was to receive the balance of funds after the payment of claims. I would appreciate your letting me know what Mr. Caplan's agreement was with the SBA." (emphasis added). That letter, inquiring about the SBA agreement, strongly suggests why principal counsel was equivocal in his 60(b) motion. In response to that letter we are informed only that local counsel was then furnished with the SBA documents. The record is silent as to any correspondence accompanying those documents which might shed some light on how the SBA matter was to be handled. It appears local counsel was left without explanation of a most important consideration and given no, or at least inadequate, instructions.
 
 
 40
 The November letter of local counsel also mentions not just one claim, but claims, which were to be resolved before any balance was to be distributed to SBA. It is clear that principal counsel was aware of the other outstanding claims including the two in question on this appeal. Those two claims were both supported by prior judgments of courts of record. Yet Caplan's principal counsel alleges that for some reason he believed only the uncontested attorney's lien would be considered at the "final disposition of the claims" on December 21, 1977.
 
 
 41
 The following sequence of events is also interesting. The original "final judgment" was entered on December 22, 1977. On January 11, 1978 local counsel advised St. Louis counsel by letter about the distribution authorized to be made to all claimants. After receiving that letter principal counsel alleges he called the local counsel on January 13, 1978 and ascertained that local counsel mistakenly believed that Caplan had had no objection to the payment of the other claimants. If local counsel was mistaken, it appears the fault, if any, may lie elsewhere. Again, we note we are not told what Caplan himself had nor had not authorized his attorneys to do. No explanation is given for this total failure to hear what the client has to say about any of this.
 
 
 42
 In the meantime, on February 3, 1978, several weeks after the alleged misunderstanding between co-counsel comes to light, no 60(b) motion having yet been filed, Caplan receives a strong letter from the SBA about the balance due on the indebtedness. That letter reminded Caplan in no uncertain terms that under his prior financing arrangements he was personally liable to SBA for the unpaid balance. Caplan was given 15 days to resolve the matter along with the warning that "there can no longer be a procrastination." The SBA letter concluded that SBA was aware of the equity in Mr. Caplan's residence and that SBA would look to that equity for recovery of the balance due. Thereafter, on March 2, 1978 Caplan's counsel filed the 60(b) motion. SBA, incidentally, opposed the allowance of the motion even though it would be beneficial. Those circumstances suggest to me a strong desire on Caplan's part to somehow avoid the stipulation for final judgment which on retrospect appeared unfavorable. Perhaps Caplan had forgotten the possibility of his being personally liable for the corporate debt. Some similar concern with hindsight is evidenced in my dissent in Bradford Exchange v. Trein's Exchange, 600 F.2d 99 (7th Cir. 1979). Again, I think we deserve to hear from Caplan himself. The majority recognizes that there is evidence in the record supporting the characterization that the true motivation for Caplan's motion was not a misunderstanding between attorneys but an after the fact realization that the judgment left Caplan personally liable to SBA for a substantial sum. I agree with that comment, only I agree with it more than the majority does.
 
 
 43
 The 60(b) motion seeks relief on the grounds only of "mistake, inadvertence, and surprise." Excusable neglect is not mentioned. Perhaps what happened may be considered some form of mistake, but I am not sure exactly what mistake is being referred to or who made it. At least, I have some reservation about whether the word "mistake" as used in the rule was intended to cover the alleged circumstances. Also, what or whose "inadvertence" is intended is likewise not identified. As far as "surprise" is concerned, the surprise was Caplan's when he read the straightforward letter from SBA. Based on a record leaving significant questions unanswered, I do not believe the trial court should then have so easily "surprised" the successful claimants by holding that their stipulated final judgment was not final after all. The money had long since been distributed in accordance with the original order.
 
 
 44
 Perhaps the relief granted may be correct, but I do not believe we have the whole story and do not believe finality should so easily be upset without at least a more satisfying explanation.
 
 
 45
 I therefore respectfully dissent.
 
 
 
 [1]
 The other defendants receiving portions of the fund in the initial distribution were Charles Delano, the State of Illinois, the Internal Revenue Service and the SBA. The SBA is an appellee in this court, Widman and Pomagalski are appellants and the others listed above are not parties to this appeal
 
 
 [2]
 The amount of the entire fund is $78,979.67. Charles Delano received $5,668.19 in the initial distribution and the same amount in the distribution appealed from. His entitlement to that amount is not at issue in this appeal. Accordingly, when we refer to the "fund" in this opinion, we are referring only to the amount at issue here the $73,311.48 awarded to the SBA
 
 
 [3]
 The agreed distribution was as follows:
 
 
 [1]
 Charles H. Delano $ 5,668.19
 * * *
 
 
 [2]
 Widman Trucking &
 Excavating, Inc. $ 19,602.36
 * * *
 
 
 [3]
 Jean Pomagalski, S.A. $ 18,680.00
 * * *
 
 
 [4]
 State of Illinois $ 692.72
 * * *
 
 
 [5]
 State of Illinois $ 1,102.15
 * * *
 
 
 [6]
 Internal Revenue Service $ 94.38
 * * *
 
 
 [7]
 Small Business Administration $ 33,139.87
 * * *
 
 
 [8]
 Pere Marquette Ski Corp. Nothing
 * * *
 
 
 [9]
 Donald S. Caplan Nothing
 * * * * *
 Smith v. Widman Trucking & Excavating, Inc., No. 77-3142 (S.D.Ill. Dec. 22, 1977), memo. op. at 1-2.
 
 
 [4]
 Rule 60(b) provides, in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . .
 The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.
 Fed.R.Civ.P. 60(b).
 
 
 [5]
 The situations in Associates Discount, supra, and Thomas, supra, are also very similar to that now before us. In Associates Discount, the defendant's counsel had informed the defendant of a proposed stipulation and thought she had consented. It was later alleged that she did not in fact understand the effect of the stipulation and thus had not given effective consent. The Third Circuit reversed the district court's denial of defendant's motion to vacate, finding that the district court must, on remand, address the issue of the attorney's authority to settle. Similarly, in Thomas, supra, an attorney stipulated to final disposition of a suit. His clients later moved to vacate, alleging that the attorney had no authority to dispose of the suit in this manner. At a hearing on the motion, the attorney and clients testified with respect to their misunderstanding. The district court denied the motion, finding it "inconceivable" that the clients had not known of the stipulation. The Tenth Circuit found, with respect to one client, that this action was an abuse of discretion and reversed as to that client. These cases are discussed in greater detail in Bradford Exchange, supra, 600 F.2d at 102
 
 
 [6]
 Widman and Pomagalski emphasize the fact that Caplan himself did not file an affidavit. The essence of Caplan's Rule 60(6)(1) motion was that a misunderstanding occurred between his two attorneys, not between himself and his attorneys. The affidavits of the attorneys speak directly to this contention, setting out their communications and interpretations. While an affidavit from Caplan may well have been illuminating and helpful, we cannot say it was so essential that the decision of the district court to grant Caplan's motion, in its absence, was an abuse of discretion
 
 
 [7]
 Widman and Pomagalski allege that the delay prejudiced them in several respects. See Brief of Appellants at 23. However, the prejudice, if any, was not the result of Caplan's delay in filing the motion, but rather the result of the fact that the motion was granted at all, whenever filed, and the fact that Widman and Pomagalski did not ultimately prevail on the merits. Marquette did not become defunct during the 10 week period between entry of judgment and the filing of Caplan's motion; it "long ago became defunct." Id. Dismissal of the garnishment suit and payment of attorneys' fees were the result not of delay but of the initial distribution. The harm to Widman and Pomagalski is that because of the SBA's success on the merits, they are required to return money to which they believed they were entitled and which they may already have spent. This harm is not attributable to Caplan's delay. It has not been suggested that the 10 week delay in any way prejudiced Widman's and Pomagalski's ability to litigate the merits of the dispute
 
 
 [8]
 The interpleader statute provides, in pertinent part:
 (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
 (1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of controversy.
 28 U.S.C. § 1335(a).
 
 
 [9]
 This priority rule had its origin in cases involving federal tax liens. See, e. g., Equitable Life, supra, 384 U.S. at 327, 86 S.Ct. at 1564; U. S. v. New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). As the cases cited in the text indicate, it has since been applied to claims of the Small Business Administration